Carlton McCLENATHAN,
et al., Plaintiffs,

v.

RHONE–POULENC, INC., Defendant.

Civil Action No. 2:96–0163.

United States District Court,
S.D. West Virginia,
Charleston Division.

May 30, 1996.

Richard Neely, Neely & Hunter, Charleston, WV, Jack W. Harang, New Orleans, LA, Henry Dart, Metairie, LA, for plaintiffs.

James Eric Whytsell and A.L. Emch, Jackson & Kelly, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant's motion to dismiss. Defendant's motion is GRANTED in part and DENIED in part.[1]

### I. FACTUAL PREMISES

Defendant is a New York corporation doing business in Kanawha County, West Virginia. Plaintiffs are putative class representatives of persons seeking redress for events that occurred on February 15, 1996.[2] A fire broke out at Rhone–Poulenc's Institute, West Virginia plant on that date. During the occurrence, a cloud of toxic substances that contained toluene and MIC was released into the area atmosphere.

Pre-established emergency response procedures were implemented by Defendant and public officials. As a result, the public was ordered to "shelter-in-place" and certain thoroughfares were closed temporarily. A few individuals suffered physical injuries from exposure to the chemicals. Most of those affected suffered only inconvenience and emotional distress occasioned by the incident.

Plaintiffs filed this action on February 26, 1996. The Complaint contains five "Counts"

1. The Court denied Plaintiffs' motion to exceed the twenty-page limitation on briefing contained in the Local Rules. Nevertheless, Plaintiffs merely shifted their additional pages to the end of their response brief and split it into three "exhibits." Plaintiffs have taken their one bite at the apple—in the future, the Court will sanction any similar intentional breach of the Local Rules appropriately.

2. Plaintiffs' response brief intimates this case goes beyond the events of February 15, 1996. For instance, Plaintiffs state:
 Indeed, the over-arching consideration in this and the other chemical leak cases is that the most significant health hazard from the chemical industry in the Kanawha Valley is *NOT* the spectacular spills like the one involved in this case, but rather the steady drip, drip, drip, leak, leak, leak, that occurs in tiny quantities day in and day out because of poor maintenance and gross negligence.
 Pls.' resp. at 4 (emphasis in original). Plaintiffs' complaint, however, clearly discloses the basis for this lawsuit is limited to the events of February 15. *See, e.g.,* Compl. at 3, 5; *see* Pls.' resp. at 1 (stating "[b]oth of these chemicals were released during the 15 February 1996 incident *that is the subject of this lawsuit.*") (emphasis added).

alleging claims for (1) strict liability pursuant to *Restatement (Second) of Torts* § 519 (1977); (2) general strict liability or, in the alternative, negligence; (3) *res ipsa loquitur;* (4) "medical monitoring;" and (5) class action certification.[3] The complaint seeks compensatory and punitive damages as well as equitable relief to require Defendant's submission to regular independent safety audits.

Defendant requests the Court to dismiss with prejudice all claims to the extent they purport to aver: (1) claims for emotional distress unrelated to a physical injury; (2) claims for inconvenience, out-of-pocket expenses, lost wages, lost profits, or other "harms" unrelated to personal injury or physical damage to property; (3) claims for "medical monitoring" of those class members who, purportedly, now have an increased likelihood of contracting cancer, pulmonary disease, or other ailments in the future due to chemical exposure; (4) a claim under the evidentiary doctrine of *res ipsa loquitur;* and (5) claims seeking independent safety audits of Defendant's Institute facility.

## II. THE LAW

### A. Standard Governing a Motion to Dismiss:

■ The movant faces a difficult and exacting burden under *Rule* 12(b)(6), *Federal Rules of Civil Procedure.* The well-settled standard applicable to a motion to dismiss was recently restated by this Court as follows:

> 'In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.' *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied sub nom., American Home Products Corp. v. Mylan Laboratories,*

*Inc.,* —— U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

*Hurt v. United States,* 889 F.Supp. 248, 251 (S.D.W.Va.1995).

Commentators recognize "[t]echnical defects in a complaint ... are no longer grounds for final dismissal" and "[t]he fact that a complaint is inartistically drawn is not grounds for its dismissal...." 27 Thomas J. Goger *et al., Federal Procedure* § 62:21 (1984). Nevertheless, "[t]here is no duty on the part of a court to create a claim which the plaintiff has not spelled out in his complaint." *Id.*

### B. Emotional Distress

Defendant asserts West Virginia law generally does not allow recovery of damages for emotional distress absent a related physical injury either directly caused by or later resulting from the tort. Defendant correctly recognizes (1) mere exposure to toxic chemicals, without more, does not constitute a physical injury; and (2) Plaintiffs have not identified any physical manifestations of the alleged distress.

In *Ball v. Joy Technologies, Inc. Co.,* 958 F.2d 36 (4th Cir.1991), *cert. denied,* 502 U.S. 1033, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992), our Court of Appeals stated the then-existing law on the recovery of emotional distress damages:

> Courts in West Virginia ... have recognized that damages for emotional distress may be recovered in three specific instances: (1) where the emotional disturbance results from an actual physical injury caused by the impact or occurrence of the tort; (2) where there is no initial impact or injury but physical injury thereafter results as the causal effect of the defendant's wrong; and (3) *where there is no impact or physical injury but emotional disturbance results from an intentional or wanton wrongful act caused by the defendant.*

*Id.* at 39 (citations omitted) (emphasis added); *see also Tobin v. Ravenswood Aluminum Corp.,* 838 F.Supp. 262, 271 n. 11

---

**3.** Counts three and five are not pled properly as independent causes of action. Count four is also deficient. The substance of Plaintiffs' remaining allegations, liberally construed, allege a claim for intentional infliction of emotional distress.

(S.D.W.Va.1993); *Mutafis v. Erie Ins. Exchange*, 561 F.Supp. 192, 203 (N.D.W.Va. 1983), *aff'd*, 775 F.2d 593 (4th Cir.1985); *Allen v. Smith*, 179 W.Va. 360, 363–64, 368 S.E.2d 924, 928 (1988) (discussing the rationale for allowing recovery of emotional distress as an element of damages for an intentional tort unaccompanied by resulting physical injury and stating "[i]n these situations the severity of the underlying act is utilized to support the reasonableness of the claim for emotional distress.").[4]

■ Plaintiffs' mere exposure to toxic chemicals is not a physical injury under West Virginia law. *Ball*, 755 F.Supp. 1344, 1364, *aff'd*, 958 F.2d at 38–39, *cert. denied*, 502 U.S. 1033, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992). *Ball*'s holding is supported by analogous recent pronouncements from the West Virginia Court. *See, e.g., Johnson v. West W.Va.* 481, 483, 425 S.E.2d 157, 159 (1992). This is not a meaningless distinction, as the court noted "[i]t is the very nature of the relationship between the plaintiff and the victim which makes the emotional reaction experienced by the plaintiff so poignant." *Id.* at 487, 425 S.E.2d at 163. The court in *Heldreth* also went to great lengths to explain the required nature and depth of the emotional distress, *id.* at 489–91, 425 S.E.2d at 165–67, and further observed " '[t]o impose liability for any emotional consequence of negligent conduct would be unreasonable....' " *Id.* at 489, 425 S.E.2d at 165 (quoted authority omitted); *see also Criss v. Criss*, 177 W.Va. 749, 751, 356 S.E.2d 620, 622 (1987) (stating " 'Under West Virginia law in an action to recover for an intentional tort, *as opposed to a negligent tort*, a plaintiff is entitled to have such elements as mental anguish ... considered by the jury in arriving at an award for actual damages.' ") (quoting *Sprouse v. Clay Communication, Inc.*, 158 W.Va. 427, 454, 211 S.E.2d 674, 693, *cert. denied*, 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107 (1975)) (emphasis added); *Whitehair v. Highland Memory Gardens, Inc.*, 174 W.Va. 458, 462, 327 S.E.2d 438, 443 (1985) (noting "the general rule that damages for mental distress cannot ordinarily be recovered for a negligent act that does not produce some physical injury").

*Ricottilli*'s breadth is further indicated by *Bramer v. Dotson*, 190 W.Va. 200, 437 S.E.2d 773 (1993), a case involving a plaintiff who was erroneously diagnosed with AIDS. Plaintiff's claims were grounded in negligence, and defendants argued there could be no damages because plaintiff's "injuries were limited to mental and emotional damages without any physical injury." *Id.* at 201, 437 S.E.2d at 774. The West Virginia Court did not narrow *Ricottilli*'s holding. Rather, it confirmed the statement in *Ricottilli* that "a person may recover for the negligent infliction of emotional distress in the absence of an accompanying physical injury upon a showing that the claim for emotional damages is not spurious." *Id.*

The Court need not reach the question of *Ricottilli*'s scope. While Plaintiffs do appear to assert an amorphous negligence claim, they do not plead negligent infliction of emotional distress. The resolution of such an issue, if isolated, may require a certification to the Supreme Court of Appeals of West Virginia.

---

4. Where negligence results only in emotional disturbance without accompanying physical injury, illness or other consequences, the "great majority of courts" still deny recovery in the usual case. W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 54 (5th ed. 1984); *Restatement (Second) of Torts* § 436A (1977). There are two well-recognized exceptions to the general rule: (1) negligent transmission of a message, especially one announcing a death; and (2) the aggravated negligent mishandling of corpses. *See* Keeton *et al., supra* § 54. These types of cases "have in common ... an especial likelihood of genuine and serious mental distress ... which serves as a guarantee that the claim is not spurious." *Id.* A "handful of courts" depart from the general rule and permit a negligence cause of action for the pure infliction of serious emotional distress without more. *Id.*

A broad reading of *Ricottilli v. Summersville Memorial Hospital*, 188 W.Va. 674, 425 S.E.2d 629 (1992) would lead one to conclude West Virginia has abandoned the general rule in favor of this minority trend. While *Ricottilli* did involve an improper autopsy, the Supreme Court of Appeals did not appear to treat the case under the narrow dead-body exception to the physical-injury rule. While the court spoke in terms of "extending the 'dead body exception,' " its Syllabus Point 2 held without qualification that "[a]n individual may recover for the negligent infliction of emotional distress absent accompanying physical injury upon *a showing* of facts sufficient to guarantee that the emotional damages claim is not spurious." *Id.* at 675, 425 S.E.2d at 630 (emphasis added).

The West Virginia Court attempted to limit its holding by observing " 'cases will obviously be infrequent in which "mental disturbance," not so severe as to cause physical harm, will clearly be a serious wrong worthy of redress and sufficiently attested by the circumstances of the case.' " *Id.* at 680, 425 S.E.2d at 635 (quoted authority omitted). The necessary showing, however, could be read as imposing only a slight burden on a plaintiff alleging negligent infliction of emotional distress.

The seeming breadth of *Ricottilli* is confusing, especially when the West Virginia Court just four days earlier limited negligent infliction claims to plaintiffs experiencing serious emotional distress after witnessing a close relative suffer critical injury or death. Syl. pt. 1, *Heldreth v. Marrs*, 188

*Virginia Univ. Hosps., Inc.,* 186 W.Va. 648, 652, 413 S.E.2d 889, 893 (1991) (stating "before a recovery for emotional distress damages may be made due to a fear of contracting a disease, such as AIDS, there must first be exposure *to the disease.*") (emphasis added).

■ Further, Plaintiffs do not allege suffering subsequent resulting physical manifestations. According to *Ball,* Plaintiffs' best, and perhaps only, chance for recovery of these damages is via a properly pled intentional tort. The only such tort conceivably applicable here is a claim for intentional infliction of emotional distress.[5]

West Virginia's law for compensating plaintiffs with purely mental injuries has advanced somewhat since the following turn-of-the-century statement by the Supreme Court of Appeals:

"[a]nxiety of mind and mental torture are too refined and too vague in their nature to be the subject of pecuniary compensation in damages, except where, as in case of

personal injury, they are so inseparably connected with the physical pain that they cannot be distinguished from it, and are therefore considered a part of it[.]"

*Davis v. Western Union Tele. Co.,* 46 W.Va. 48, 53, 32 S.E. 1026, 1028 (1899) (quoted authority omitted).

The sea change in West Virginia law since *Davis* was summed up by Justice Thomas B. Miller's observations in *Courtney v. Courtney,* 190 W.Va. 126, 437 S.E.2d 436 (1993), quoting first from analogous extra-territorial precedent:

"The ... court [in *Paugh v. Hanks,* 451 N.E.2d 759 (Ohio 1983)] further stated that 'a rigid requirement which prevents a plaintiff from recovering from serious emotional harm except where a physical injury manifestation has ensued, completely ignores the advances made in modern medical and psychiatric science[.]' The court further pointed out that '[s]erious emotional distress can be as severe and debilitating as physical injury and is no less deserving of redress.' "

---

5. The intentional infliction of emotional distress has been characterized as an intentional tort. *Settle v. Settle,* 858 F.Supp. 610, 615 (S.D.W.Va. 1994).

The Court can dispose immediately of two putative torts alleged by Plaintiffs to support recovery of emotional distress damages. Plaintiffs first assert an assault and battery claim. They argue emotional distress damages can be recovered as "a by-product of battery" and that "many members of the Plaintiff class were 'battered' by the toxic chemicals." Pls.' resp. at 11. The conceptual flaw in Plaintiffs' assertion is readily apparent when one compares it to the well-settled elements for battery set forth in Syllabus Point 1 of *Funeral Services by Gregory, Inc. v. Bluefield Community Hospital,* 186 W.Va. 424, 425, 413 S.E.2d 79, 80 (1991), *overruled on other grounds by, Courtney v. Courtney,* 190 W.Va. 126, 437 S.E.2d 436 (1993): "In order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person." The Court is not prepared to extend the contours of this tort to hold the mere presence and resultant inhalation of chemicals in the air constitutes a "harmful or offensive contact" by the emitter.

Second, Plaintiffs seek recovery for negligent restraint of liberty. Plaintiffs concede their "research of West Virginia law discloses no reported case where a person sued another for the *negligent* restrain [sic] of his liberty." (emphasis in original). Pls.' resp. at 13. At oral argument, Plaintiffs clarified their position further, stating

they have not located a single case anywhere alleging such a cause of action. Again, the recognition of, and contours to, this proposed claim substantially impact West Virginia public policy because of the sheer numbers the novel claim may generate. While the Court is aware of its responsibility under the *Erie* doctrine, it is also cognizant of its obligation "to rule upon state law as it presently exists and not to surmise or suggest its expansion." *Washington v. Union Carbide Corp.,* 870 F.2d 957, 962 (4th Cir.1989). This Court concurs in the Court of Appeals' observation in the analogous *Ball* decision that "such [public policy] considerations are better left to the respective legislatures and highest courts of West Virginia...." *Ball,* 958 F.2d at 39.

Plaintiffs also assert emotional distress is a proper element of damages "whenever *any* other recognizable tort occurs simply because the fraud problems are less likely to be present." Pls.' resp. at 11 (emphasis in original). The cases cited by Plaintiffs, however, all involved either (1) an intentional tort or a tort carrying with it a "sufficient indicia of intent," such as retaliatory discharge, *see* syl. pt. 3, *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 674, 289 S.E.2d 692, 694 (1982); or (2) recovery by bystanders witnessing a close relative suffer critical or fatal injury as a result of a defendant's negligence. Aside from intentional infliction of emotional distress, Plaintiffs have neither alleged a viable intentional tort nor a bystander claim.

From the foregoing, it seems clear that an action for *severe emotional distress caused by a defendant's tortious conduct is a personal injury* . . . .

It is too late in the day medically to say that recognizable mental or emotional injuries that arise from severe emotional distress are not injuries to the person.

. . . *[I]t is a species of personal injury.*

. . . .

For the foregoing reasons, we conclude that a claim for severe emotional distress arising out of a defendant's tortious conduct *is a personal injury claim* and is governed by a two-year statute of limitations under W.Va.Code, 55–2–12(b).

*Id.* at 131, 132, 133, 437 S.E.2d at 441, 442, 443 (citations omitted) (emphasis added); *see also Bramer v. Dotson,* 190 W.Va. 200, 202, 437 S.E.2d 773, 775 (1993) (stating "We held in *Courtney* that a claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim."); *Heldreth v. Marrs,* 188 W.Va. 481, 485, 425 S.E.2d 157, 161 (1992) (overruling in part *Monteleone v. Co-operative Transit Co.,* 128 W.Va. 340, 36 S.E.2d 475 (1945) and stating "[In 1945, we] did not fully envision the advancements that were ultimately made in the medical and psychiatric sciences, which have been recognized by other courts, that have enabled physicians to diagnose serious emotional distress and identify malingerers. Reliable medical evidence is available to weed out the fraudulent and trivial claims.")

Perhaps the quantum leap in West Virginia jurisprudence recognizing emotional distress damage claims occurred in *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982). In Syllabus Point 6 of *Harless,* the Supreme Court of Appeals adopted the formulation for the intentional infliction of emotional distress, commonly known as the tort of outrage, contained in *Restatement (Second) of Torts* § 46 (1977):

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id.* at 674, 289 S.E.2d at 694; syl. pt. 3, *Tanner v. Rite Aid of West Virginia, Inc.,* 194 W.Va. 643, 645, 461 S.E.2d 149, 151 (1995); syl. pt. 1, *Dzinglski v. Weirton Steel Corp.,* 191 W.Va. 278, 280, 445 S.E.2d 219, 221 (1994); syl. pt. 4, *Keyes v. Keyes,* 182 W.Va. 802, 803, 392 S.E.2d 693, 694 (1990); syl. pt. 3, *Kanawha Valley Power Co. v. Justice,* 181 W.Va. 509, 510, 383 S.E.2d 313, 314 (1989); *Criss v. Criss,* 177 W.Va. 749, 751, 356 S.E.2d 620, 622 (1987); syl. pt. 8, *Cook v. Heck's Inc.,* 176 W.Va. 368, 369, 342 S.E.2d 453, 454 (1986).

■ The elements for intentional infliction of emotional distress were restated in *Tanner:*

We suggested in *Harless* that a plaintiff alleging the tort of outrage must prove the following four elements: 'One, the wrongdoer's conduct was intentional or reckless. . . . Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. . . . Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.' *Id.* at 694–95, 289 S.E.2d at 704 (quoting *Womack v. Eldridge,* 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974)).

*Tanner,* 194 W.Va. at 650, 461 S.E.2d at 156 n. 10; *see also Settle v. Settle,* 858 F.Supp. 610, 613–14 (S.D.W.Va.1994).

This Court and *Tanner* both recognized the West Virginia Court looks to the comments and illustrations following § 46 for guidance on the contours to the tort of outrage. *See, e.g., Tanner,* 194 W.Va. at 650, 461 S.E.2d at 156 (stating "the jurisprudence and comments attached to § 46 have substantially influenced our subsequent development of this claim"); *Settle,* 858 F.Supp. at 613 (stating "the West Virginia Court . . . looks to the Restatement for explanations as to the type of behavior which constitutes 'extreme or outrageous conduct.' "); *Mutafis,* 561 F.Supp. at 203 n. 17 (stating "[t]he court in *Harless* borrowed the definition of 'emotional distress' found in Section 46(j) of the *Restatement (Second) of Torts* . . . ."). The

relevant comments, while lengthy, are worth the footnote.[6]

In *Hines v. Hills Dep't Stores, Inc.,* 193 W.Va. 91, 454 S.E.2d 385 (1994), the court noted the practical difficulty of giving concrete guidance on when the elements of the tort are satisfied: "It is almost impossible for this Court to define what will make a case of outrageous conduct. Instead, we define what it is not on a case-by-case basis." *Id.* at 96, 454 S.E.2d at 390. As the comments indicate however, and as *Hines* observed, "the tort of outrageous conduct ... is a difficult fact pattern to prove." *Id.* There is good reason for this heightened-proof requirement. As Plaintiffs' counsel himself once noted: "Especially where no physical injury accompanies the wrong, the tort of outrage is a slippery beast, which can easily get out of hand without firm judicial oversight." *Keyes,* 182 W.Va. at 805, 392 S.E.2d at 696 (Neely, C.J.);

6. Comment (d) discusses outrageous conduct as follows:

> d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'*
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Id.* (emphasis added). Comment (j) deals with the meaning of severe emotional distress:

*Mace v. Charleston Area Med. Ctr. Found., Inc.,* 188 W.Va. 57, 66, 422 S.E.2d 624, 633 (1992) (stating "the concern 'that a claim for emotional distress without any physical trauma may permit a jury to have a rather open-hand in the assessment of damages.' ").

The Court must, however, also factor in the sliding-scale approach first mentioned in *Harless* and then reasserted in *Tanner.* West Virginia jurisprudence appears to coalesce the degree of wrongdoing or outrageousness of a defendant's actions with the necessary showing of severe emotional distress:

> Further, as stated by the leading commentators, often the flagrancy and 'enormity' of the defendant's misconduct 'adds especial weight to the plaintiff's claim, and is in itself an important guarantee that the mental disturbance which follows is serious and not feigned.' Keeton et al., *supra*

> j. *Severe emotional distress.* The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *It is only where it is extreme that the liability arises.* Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.* The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. For example, the mere recital of the facts in Illustration 1 above goes far to prove that the claim is not fictitious.
>
> The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. See Comment f. It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

*Id.* (emphasis added).

§ 12 at 57 and 56 (stating also that "the elimination of trivialities calls for nothing more than the same common sense which has distinguished serious from trifling injuries in other fields of the law"); *Restatement, supra* § 46 cmt. j (stating that "in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed").

*Tanner,* 194 W.Va. at 655, 461 S.E.2d at 161.[7]

■ Defendant correctly points to the often unprecedented nature of the conduct and mental suffering necessary to prove intentional infliction of emotional distress. At this stage of the litigation, however, bearing in mind the restrictive standard applicable to a motion to dismiss, the Court concludes the allegations proffered by Plaintiffs are minimally sufficient to state a claim for intentional infliction of emotional distress.

As argued in their brief, Plaintiffs assert Defendant acted "conscious[ly]" in *"not* [doing] certain types of maintenance that a reasonable person would do who was primarily concerned with safety rather than simply greedy for profits."[8] Pls.' resp. at 5; *see also* Compl. at 6–7. The recitation of this

allegation to "an average member of the community," if proven, would likely "arouse his resentment against the [Defendant], and lead him to exclaim, 'Outrageous!' " *Restatement (Second) of Torts* § 46 cmt. d.[9] Nevertheless, the Court must confess its grave concerns about Plaintiffs' ability to come forth with proof of the critical proposition.

Regarding the second critical element of severe emotional distress, the Court has some difficulty accepting that the putative multitudes comprising Plaintiffs' class suffered more than minimal concern, as opposed to severe emotional distress, during the incident. But two considerations, at least immediately, save Plaintiffs' allegations of severe emotional distress from dismissal. First, assuming proof of Defendant's nefarious motive or recklessness, which the Court must do at this stage of the litigation, its outrageousness would impact the quantum of severe emotional distress required by *Tanner* and *Harless.* Second, Plaintiffs have promised reliable expert testimony in support of the emotional distress alleged.[10] Plaintiffs' failure of proof in these two critical areas could cause the rejection of the bulk of their case at summary judgment.

7. The Court disagrees with Plaintiffs that *Tanner* "constructed a new system for determining whether an emotional distress claim should be permitted[.]" Pls.' resp. at 10. The quoted statement from *Tanner* was foreshadowed earlier by *Harless. See Harless,* 169 W.Va. at 694, 289 S.E.2d at 704. Further, as noted in *Tanner,* the approach is also compelled by the comments to § 46, which the Supreme Court of Appeals has repeatedly relied upon since *Harless. Tanner,* 194 W.Va. at 655, 461 S.E.2d at 161.

8. Defendant is correct that Plaintiffs' pleadings and briefing have left the Court to speculate about the nature of the claims alleged. For instance, while this quoted allegation is cast in terms of negligence, it appears to suggest conduct that is either intentional or reckless. Later still in their brief, Plaintiffs suggest they can offer proof of "willful, wanton and reckless conduct" to support a claim for intentional infliction of emotional distress.

The Court is cognizant of the minimal requirements of notice pleading. Plaintiffs could have saved the Defendant and the Court a great deal of time, however, if they simply explicated the factual and legal bases for the complaint.

9. This conclusion is buttressed by a comparison of Defendant's alleged wrongdoing to the illustrations of outrageous conduct found in the com-

ments to § 46. *See Restatement (Second) of Torts* § 46 cmt. d, illus. 1 (1977) (person A falsely telling person B that B's husband was badly injured in an accident and was in the hospital with two broken legs); *id.* illus. 2 (person B giving person A a bathing suit B knows will dissolve in water, leaving A naked in the presence of persons whom she has just met).

10. In *Tanner,* the Supreme Court of Appeals declined to "adopt a bright-line rule that expert testimony is never required to prove the tort of outrage." *Id.* at 645, 461 S.E.2d at 151, syl. pt. 4, in part. Rather, *Tanner* left it to the trial judge to determine whether plaintiff presented sufficient evidence absent expert testimony such that the jury from its own experience could evaluate the claim. *Id.* To avoid any confusion, Plaintiffs are on notice the Court will expect expert testimony on the issue of severe emotional distress. Assuming the presence of the severe emotional distress attested to by Plaintiffs, this should not impose an insurmountable burden because, "at the very least, this type of ... distress will exhibit mental and emotional damages *readily recognizable* by qualified experts." *Courtney,* 190 W.Va. at 132, 437 S.E.2d at 442 (emphasis added).

Accordingly, Defendant's motion to dismiss this portion of Plaintiffs' claims is DENIED.

### C. Claims for Annoyance, Inconvenience, Out-of-Pocket Expenses and Lost Wages or Profits

Defendant next seeks dismissal of Plaintiffs' claims for inconvenience, out-of-pocket expenses, lost wages, lost profits, or other "harms" that are not related to personal injury or physical damage to property.[11] The Court agrees with Defendant that "none of these claimed losses, standing by themselves, provide the basis for any cognizable cause of action under West Virginia law." Def.'s mem. in supp. at 5.

Further, Plaintiffs appear to base the recovery of these elements of damage primarily on their ill-conceived "tort" for negligent restraint of liberty. As the Court has noted and Plaintiffs concede, there is no extant legal basis for such a tort. Further, while Plaintiffs appear to assert a strict liability claim pursuant to *Restatement (Second) of Torts* § 519, they have proffered no authority, much less West Virginia case law, suggesting the claim might serve as a basis for recovery of the challenged damage elements without an associated personal injury or property damage. The Court would welcome such authority at the summary judgment stage if Plaintiffs indeed can find it.

■ That issue need not be addressed now, however, because Plaintiffs have alleged a cognizable personal injury to support the requested damage elements.

As Defendant correctly concedes, "mental anguish, lost wages or profits, out-of-pocket expenses, and similar elements of damages are universally recoverable in cases involving actual personal injury." Def.'s mem. in supp. at 5; *see* 22 Am.Jur.2d *Damages* § 41 (1988) (stating "General damages in a personal injury case include such matters as mental or physical pain and suffering, inconvenience, or loss of enjoyment which cannot be definitively measured in monetary terms, and are incurred in addition to quantifiable damages such as lost wages and medical expenses.") (footnotes omitted); *id.* § 133 (stating "Damages in personal injury cases generally consist of loss of earnings, medical expenses, and mental and physical pain and suffering, but the plaintiff should also be compensated for any other damage that can reasonably be said to have followed as the proximate consequence of the injury received . . . .").

*Courtney* teaches "a claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim." *Courtney*, 190 W.Va. at 131, 437 S.E.2d at 443; *see also Bramer*, 190 W.Va. at 202, 437 S.E.2d at 775 (stating "We held in *Courtney* that a claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim.").

Plaintiffs thus have stated a viable personal injury claim for intentional infliction of emotional distress at this juncture. The Court must allow for the potential recovery of the intangible and tangible damage elements of inconvenience, out-of-pocket expenses, lost wages and profits for those individuals who reasonably believe they satisfy the elements of the tort of outrage.[12] Ac-

11. Defendant is slightly equivocal about what type of injury has to be alleged in order to recover these elements of damage. Throughout the motion to dismiss, the memorandum in support and the reply brief, Defendant complains about the lack of a "personal" injury. *See* Def.'s mot. to dismiss at 1; Def.'s mem. in supp. at 2, 3, 4 (twice), 5 and 16; Def.'s reply at 3. Once in the memorandum in support and once in the reply Defendant protests the lack of a "physical" injury. Def.'s mem. in supp. at 5; Def.'s reply at 2. In any event, as set out below, it appears a cognizable personal injury will support the recovery of the challenged damage elements.

12. Conceivably, this would cover the entire class. Plaintiffs are vague as to how many members of

the class have suffered severe emotional distress. Plaintiffs have separated themselves into five putative subclasses as follows: (1) all persons who suffered physical injuries; (2) all persons who suffered anxiety and emotional distress; (3) all persons who suffered inconvenience; (4) all persons who suffered lost wages and/or profits; and (5) all persons who suffered real or personal property damage.

Were the Court able to conclude some Plaintiffs suffered only inconvenience or lost wages and/or profits without more, it might be disposed to dismiss their claims. Practically this is not possible at this juncture, given Plaintiffs' statement that "[t]he subclasses within the class consist of many overlapping sets; thus, there are plaintiffs who have suffered two or more of the

cordingly, this portion of Defendant's motion to dismiss is DENIED. Defendant may revisit this issue at summary judgment in the event Plaintiffs' tort of outrage claim is then subject to dismissal on the merits.

### D. Medical Monitoring

Count four of the Complaint raises an independent claim for "medical monitoring." Defendant seeks dismissal of this Count for several reasons. Most compelling is that our Court of Appeals recently concluded there is no basis in West Virginia law for a separate cause of action for medical monitoring. *See Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4th Cir.1991), *cert. denied*, 502 U.S. 1033, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992).

The available secondary authority also reads *Ball* to have so held. *See, e.g.*, 2 *Toxic Contamination Class Actions Filed in West Virginia for Leaks*, Mealey's Litigation Reports (Toxic Torts), March 29, 1996, at Vol. 4, No. 24 (citing *Ball* and stating "[m]edical monitoring, however, is not currently recognized as a cause of action in West Virginia courts. Suits seeking medical monitoring have therefore been dismissed in the past by federal courts."); Andrew J. Katz, Note, *Two Immediate Causes of Action for West Virginians Exposed to Toxic Substances: Medical Surveillance and Emotional Distress Damages*, 95 W.Va.L.R. 1143, 1152 (1993) (stating "[t]he Fourth Circuit [in *Ball*] refused to recognize medical surveillance as a cause of action, in part, because the issue has never been squarely presented to the Supreme Court of Appeals of West Virginia").

There are numerous and compelling justifications for either permitting or prohibiting a claim for medical monitoring. *See* Allan L. Schwartz, Annotation, *Recovery of Damages for Expense of Medical Monitoring to Detect or Prevent Future Disease or Condition*, 17 A.L.R.5th 327 (1994). The Court need not enter the fray because, again, it is bound by the observation in *Ball* that "such considerations are better left to the ... legislature[ ] and highest court[ ] of West Virginia." *Ball*, 958 F.2d at 39.

harms set forth above. Therefore, *any member of the class as defined above may have sustained*

Plaintiffs argue that *Ball* "misstates West Virginia law" and that authority from other jurisdictions should be followed. Pls.' resp. at 15. Plaintiffs well know the Court is not at liberty simply to ignore binding precedent. Accordingly, the Court GRANTS Defendant's motion to dismiss the medical monitoring claim.

### E. Res Ipsa Loquitur

 Defendant asserts *res ipsa loquitur*, which appears as a separate cause of action in Plaintiffs' complaint, is merely an evidentiary doctrine that establishes a presumption, or permits an inference, of negligence. As noted by Defendant, assuming the doctrine's applicability, it does not constitute an independent cause of action. Plaintiffs do not argue strenuously to the contrary. Accordingly, the Court GRANTS Defendant's motion to dismiss Count three of the complaint.

### F. Independent Safety Audits

 Defendant seeks dismissal of Plaintiffs' request for injunctive relief in the form of independent safety audits of the Institute facility. The Court questions the basis for such relief, but assuming Plaintiffs can prove their allegations that Defendant consciously ignores safety measures in favor of maximizing corporate profits, the requested injunctive relief conceivably could be appropriate in some form. Again, suitable proof of the allegations is problematic.

Based on the foregoing, the Court concludes dismissal of the requested injunctive relief is premature. Accordingly, this portion of Defendant's motion to dismiss is DENIED.

### III. CONCLUSION

The Court GRANTS Defendant's motion to dismiss the medical monitoring and *res ipsa loquitur* claims. The remainder of the motion to dismiss is DENIED, primarily due to the largely insignificant factual and legal burden imposed on Plaintiffs at this very early stage of the litigation.

*damages in one or more of the ... subclasses." Id.* (emphasis added).

Plaintiffs must understand, however, the heavy burden they now bear to recover the bulk of the relief they seek. Most of the recovery Plaintiffs seek rests on their ability to demonstrate intentional infliction of emotional distress. Plaintiffs must offer solid proof Defendant intentionally or recklessly engaged in outrageous conduct that caused them severe emotional distress. *Hines* is quite explicit in its admonition that this "is a difficult fact pattern to prove." *Hines*, 193 W.Va. at 96, 454 S.E.2d at 390. Plaintiffs' partial triumph today thus ultimately may prove to be a mere, but costly, pyrrhic victory.

The Clerk is directed to send a copy of this Order to counsel of record.