Wayne WILSON, Sr., Plaintiff,

v.

BROWN & WILLIAMSON TOBACCO
CORPORATION, Defendant.

Civil Action No. 5:96–2029.

United States District Court,
S.D. West Virginia,
Beckley Division.

June 27, 1997.

Stephen P. Meyer, Meyer & Ford, Charleston, WV, for Plaintiff.

W. Henry Jernigan, Jr., Jackson & Kelly, Charleston, WV, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Plaintiff Wayne Wilson, Sr., filed an eleven count complaint against Brown & Williamson ("B & W") seeking compensation for injuries he sustained as a result of his use of Bugler, a loose tobacco product manufactured and sold by B & W. Wilson states he smoked Bugler from 1960 to 1995. B & W moves to dismiss all but Counts Six (breach of express warranty) and Ten (damages). For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part the motion.

## I. THE "DUTY TO WARN" CLAIMS

B & W urges the Court dismiss Counts Two, Three, Four, Five, Seven and Eight,[1] which it asserts generally allege B & W failed to warn or inform adequately of the health risks associated with smoking, for two alternative reasons. First, B & W argues

---

1. Count Two alleges Bugler "was defective as a result of [B & W's] failure to provide adequate warnings regarding the adverse health consequences of smoking tobacco." Complaint ¶ 17.

Count Three alleges B & W was negligent (1) "in the manner in which they [sic] tested, researched, sold, promoted and advertised" Bugler, *id.* ¶ 21, and (2) "in failing to adequately warn of the adverse health consequences of smoking tobacco," *id.* ¶ 22.

Count Four alleges B & W negligently advertised and misrepresented their products, which rendered ineffective the warnings which had been given regarding the harmful health effects of smoking. *Id.* ¶ 25.

Count Five alleges B & W "individually and as members of the tobacco industry" intentionally misrepresented and fraudulently concealed the adverse health consequences of smoking. *Id.* ¶ 28.

Count Seven alleges B & W "individually and as members of the tobacco industry ... ignored and failed to act upon ... medical and scientific data and conspired to deprive the public ... of that ... data." *Id.* ¶ 36.

Count Eight alleges B & W's tobacco products "were defective in that [they] caused addiction and dependency, and as a result rendered any warning of their danger meaningless." *Id.* ¶ 39.

these claims are preempted by the Federal Cigarette Labeling and Advertising Act of 1965 ("FCLAA" or "Act"), 15 U.S.C. § 1331 *et seq.*, as amended. Second, B & W contends that because the risks associated with smoking are well known, West Virginia law imposes no duty to warn of such dangers.

## A. *Federal preemption*

■ In response to growing concern about the health risks associated with cigarette smoking, Congress in 1965 enacted the FCLAA.[2] The current version of the FCLAA states the purpose of the statute is

to establish a comprehensive program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—

(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331.

The FCLAA requires the now-familiar Surgeon General's *Warning* to appear in a conspicuous place on every cigarette package manufactured, imported or packaged for sale

2. The FCLAA was amended in 1969 by the Public Health Cigarette Smoking Act of 1969, Pub.L. 91–222, 84 Stat. 87, as amended, 15 U.S.C. §§ 1331–1340. The 1969 Act strengthened the warning label requirements, banned cigarette advertising on radio and television, and amended the FCLAA's preemption provision.

Congress further amended the statute in 1984 by enacting the Comprehensive Smoking Education Act, Pub.L. 98–474, 98 Stat. 2201, codified at 15 U.S.C. §§ 1331–1341. The 1984 Act again changed the warning label and extended the warning requirement to cigarette advertisements, but did not alter the preemption provision of its predecessor 1969 Act.

or distribution within the United States. 15 U.S.C. § 1333.

■ The statute contains an express preemption clause, which reads:

(a) No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

The FCLAA defines "cigarettes" as

(A) any roll of tobacco wrapped in paper or in any substance not containing tobacco, and

(B) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette described in subparagraph (A).

*Id.* § 1332(1). This definition makes clear that the statute's labeling requirement does not apply to loose tobacco products such as Bugler. Bugler products in fact do not contain the warning on their labels.

While B & W acknowledges loose tobacco products are not covered by the FCLAA's labeling requirement, it argues Congress in enacting the statute "apparently decided to preempt *all* claims relating to tobacco warnings." Reply at 3. B & W offers numerous unpublished and ultimately unpersuasive decisions in support of its contention.[3]

3. *See, e.g., Herndon v. Brown & Williamson Tobacco Corp.,* 1993 WL 475530, No. 1:92–CV:166 (W.D.Mich.1993)(unpublished decision); *Bell-Bey v. Brown & Williamson Tobacco Corp.,* No. M86–145–CA (W.D.Mich.1989)(unpublished decision)(report-recommendation of magistrate judge); *McCutchen v. Top Tobacco Co., Inc.,* No. 89–1375 (M.D.Penn.1989)(unpublished decision). *But see Varga v. Brown & Williamson Tobacco Corp.,* 1988 WL 288977 at ʰ3–5, No. G88–568 CA6 (W.D.Mich.1988)(unpublished decision)(concluding in dicta that state-law tort claims for injuries stemming from loose leaf tobacco smoking are not preempted by FCLAA). Of course, none of these cases are binding on this Court. Many involve pro se plaintiffs unschooled in the law. More importantly, the

Much of B & W's argument rests on *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), where the Supreme Court first examined the preemptive reach of the FCLAA. In *Cipollone*, the son of a longtime cigarette smoker sought recovery under various common law theories against the manufacturers of cigarettes his deceased mother smoked for many years. The manufacturers defended that the 1965 and 1969 Acts preempted the plaintiff's claims. The Court held the 1965 Act preempted none of the plaintiff's claims. A plurality of justices held the 1969 Act preempted:

> claims based on failure to warn and the neutralization of federally mandated warnings to the extent that those claims rely on omissions or inclusions in [the manufacturers'] advertising or promotions; the 1969 Act does not pre-empt [plaintiff's] claims based on express warranty, intentional fraud and misrepresentation, or conspiracy.

505 U.S. at 530–31, 112 S.Ct. at 2625.

■ To reach these conclusions, the Court began by stating the general preemption principles. The "ultimate touchstone" of preemption analysis is the purpose of Congress. *Cipollone*, 505 U.S. at 516, 112 S.Ct. at 2618 (internal quotations omitted). This intent may be

> explicitly stated in the statute's language or implicitly contained in its structure and purpose. In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.

*Id.* (internal quotations and cited authority omitted); *see also Cavallo v. Star Enterprise*, 100 F.3d 1150, 1155 (4th Cir.1996).

The Court then described the task at hand: "[W]e must fairly but—in light of the strong presumption against pre-emption—narrowly construe the precise language of § 5(b) and we must look to each of petitioner's common

law claims to determine whether it is in fact pre-empted." 505 U.S. at 523, 112 S.Ct. at 2621. The "central inquiry," according to the Court, was "whether the legal duty that is the predicate of the common law damages action constitutes a 'requirement based on smoking and health ... imposed under state law with respect to advertising or promotion[.]'" *Id.* at 523–24, 112 S.Ct. at 2621 (quoting 15 U.S.C. § 1334).

Applying the *Cipollone* methodology, this Court first must examine the FCLAA's express preemption provision, 15 U.S.C. § 1334. Wilson's claims are not expressly preempted by the FCLAA. The preemption clause applies only to "cigarettes ... labeled in conformity with the provisions" of the Act. For purposes of the FCLAA, loose tobacco products are not cigarettes. The Court cannot comprehend that, as B & W appears to argue, Bugler tobacco products fall within the FCLAA's definition of cigarettes for purposes of preemption but not for purposes of labeling. Such a reading of the Act ignores the *raison d'etre* of the statute.

■ The conclusion that the express preemption provision does not preempt Wilson's claims does not, however, end the inquiry. As the Supreme Court made clear in *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287–89, 115 S.Ct. 1483, 1487–88, 131 L.Ed.2d 385 (1995), *Cipollone* does not, as Wilson suggests, stand for the blanket proposition that implied preemption cannot exist when Congress has included an express preemption clause in a statute. Referring to *Cipollone*, the *Myrick* Court explained:

> The fact that an express definition of the pre-emptive reach of a statute 'implies' ... that Congress did not intend to preempt other matters does not mean that the express clause entirely forecloses any possibility of implied pre–emption. At best, *Cipollone* supports an inference that an express pre–emption clause forecloses implied pre–emption; it does not establish a rule.

*Id.*

After review of the statute, the Court cannot conclude Wilson's common law claims

---

cases do not conclusively or convincingly resolve the specific issues presented by this motion. While the Court could distinguish each of these

cases, it sees no need to do so. It is sufficient to say that the Court accords these decisions no precedential value.

either impliedly conflict—through subject matter preemption—or actually conflict with the FCLAA's provisions. B & W's contention that Congress' omission of loose tobacco products from the Act's labeling requirements indicates an "apparent[ ] deci[sion] to preempt *all* failure to warn claims, regardless of whether they involve pre-rolled or loose tobacco products," Def.'s Response at 3. This assumption is unfounded and contrary to at least three well established principles.

■ First, the Supreme Court has been careful to caution courts that "preemption should not be found too readily; the historic police powers of the States [are] not to be superseded ... unless that [is] the clear and manifest purpose of Congress." *Duvall v. Bristol–Myers–Squibb Co.*, 65 F.3d 392, 397 (4th Cir.1995)(internal quotation marks omitted)(quoting *Cipollone*, 505 U.S. at 515–16, 112 S.Ct. at 2617; *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); *see also Medtronic Inc. v. Lohr*, —— U.S. ——, ——, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996); *California v. ARC America Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). Such "clear and manifest purpose of Congress" is nowhere evident in the statute or legislative history.

■ Second, B & W's argument runs in opposition to the "familiar principle of *ex-*

*pressio unius est exclusio alterius:* Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone*, 505 U.S. at 517, 112 S.Ct. at 2617. While the Court is aware that implication can be overcome in certain circumstances, those circumstances are not present here. Finally, it has long been clear that, by requiring a particular warning label, Congress does not automatically preempt a regulatory field. *Cipollone*, 505 U.S. at 518, 112 S.Ct. at 2618 (citing *McDermott v. Wisconsin*, 228 U.S. 115, 131–32, 33 S.Ct. 431, 434–35, 57 L.Ed. 754 (1913)). The FCLAA offers no reason to believe Congress intended to preempt state-law claims other than those related to failure to warn of the dangers of cigarette smoking.

In sum, the Court has uncovered nothing in the FCLAA's provisions, structure, or policy sufficient to surmount the strong presumption against preemption. The statute does not speak of tobacco products; it regulates "cigarettes," and Bugler loose tobacco plainly is not a cigarette. Accordingly, the Court holds the FCLAA preempts none of Wilson's claims.[4]

### B. *Duty to warn under West Virginia law*

■ B & W further argues the Court must dismiss Wilson's failure to warn claims

---

4. B & W contends even if Count Seven is not preempted, it must be dismissed because the Complaint does not identify particular fraudulent acts as required by Federal Rule of Civil Procedure 9(b). The Rule provides, in part, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To avoid 12(b)(6) dismissal, a complaint must specifically allege the time, place and nature of the fraud. *Lasercomb Amer. v. Reynolds*, 911 F.2d 970, 980 (4th Cir.1990).

In Count Seven Wilson alleges
At all times relevant to this action defendant corporation individually and as members of the tobacco industry, were or should have been in possession of medical and scientific data that indicated that the use of their tobacco product[s] were hazardous to the health of consumers but, prompted by pecuniary motives, defendant corporation individually and as members of the tobacco industry, ignored and failed to act upon that medical and scientific data and conspired to deprive the public, and particularly the consumers of Defendant's products, of that medical and scientific data.

Complaint ¶ 37.
This pleading contains more than a conclusory assertion that fraud occurred. While it does not spell out every detail of the fraud, this is understandable given Wilson alleges the fraud took place over an extended period of time. *See Riley v. Murdock*, 828 F.Supp. 1215, 1225 (E.D.N.C.1993)("Although Rule 9(b) does not require the elucidation of every detail of the alleged fraud, it does require more than a bare assertion that such cause of action exists."); *see also* 2 *Moore's Federal Practice* § 9.03[1][b] nn. 14 & 15 (stating "[b]ecause the complexity of each case will determine the amount of specificity required, misrepresentations that are numerous and occur over extended periods of time must be alleged with somewhat less specificity. Although Rule 9(b) effectively modified the general notice pleading requirements of Rule 8(a)(1), Rule 8(e)(1) still dictates that each averment of a pleading of fraud be 'simple, concise and direct.' ")(citing cases).

because it had no duty under West Virginia law to disclose the health risks associated with its loose tobacco products because those risks were well known. In support, Defendant points to the general rule in trespass to land cases that no duty to warn of open and obvious dangerous conditions exists under West Virginia law. *See Cazad v. Chesapeake & Oh. R.R. Co.,* 622 F.2d 72 (4th Cir.1980)(citing *Burdette v. Burdette,* 127 S.E.2d 249, 252, 147 W.Va. 313, 318 (W.Va. 1962)). The Court also notes the general rule that there is no duty to warn of obvious dangers present in products. *See* W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* 686 (5th Ed.1984).

Wilson responds by citing *Morningstar v. Black & Decker Mfg. Co.,* 253 S.E.2d 666, 683, 162 W.Va. 857, 890, (1979) for the proposition that "[t]he hallmark of [the defense of assumption of risk] is actual knowledge on the part of the plaintiff." Because B & W has not demonstrated such actual knowledge, Wilson's argument goes, dismissal of these claims is improper at this juncture. Wilson is mistaken. The quoted authority from *Morningstar* concerns the *defense* of assumption of risk, a defense raised, if it is to be raised at all, by B & W. By contrast, B & W moves for dismissal of the failure to warn claims not on the basis of assumption of risk, but because it believes it is under no duty to warn of obvious, well known dangers; if it is under no such duty, there can be no breach, and the claim must fail.

With the case in its preliminary posture, the Court does not have facts before it to allow it to determine if the dangers of smoking loose tobacco products were open and obvious as far back as 1960, the year Wilson alleges he began to smoke Bugler tobacco. Because B & W has not demonstrated Wilson could prove no set of facts to support his claim and entitle him to relief, *see Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Hurt v. United States,* 889 F.Supp. 248, 251 (S.D.W.Va.1995)(Haden, C.J.), the Court declines to dismiss the duty to warn claims found in Counts Two, Three, and Seven.

▮ Wilson's additional response to B & W's argument for dismissal of failure to warn claims is somewhat difficult to follow:

> Plaintiff's complaint alleges that Defendant[ ] concealed information from Plaintiff and the general public regarding the health effects of smoking Bugler tobacco. Plaintiff began smoking Bugler tobacco products in approximately 1960. Plaintiff alleges that Defendant knew of the dangers of smoking prior to then, but to maximize monetary gain Defendant concealed this information. Thus, numerous questions of fact exist as to when Defendant knew of specific dangers and to what and when Plaintiff learned of specific dangers.

Pl.'s Response at 4. Presumably, Wilson is referring to Counts Four (negligent misrepresentation) and Five (intentional misrepresentation), which Defendant wrongly, in the Court's view, characterizes as failure to warn claims. Negligent or intentional misrepresentation and breach of the duty to warn are distinct claims with distinct elements. In its motion to dismiss, B & W did not address these claims specifically and the Court will not grant dismissal of these claims without proper argument from the movant.

B & W also characterizes Count Eight as a duty to warn claim. It plainly is not. The essential claim in Count Eight is that B & W manufactured a defective product that caused Defendant to become addicted to and dependent on the product, which in turn caused him health and emotional problems. B & W apparently agrees, given that it characterized Count Eight elsewhere in its Memorandum in Support of its motion as a design defect claim.

## II. DESIGN DEFECT CLAIM

▮ B & W next moves for dismissal of Counts One and Eight, Wilson's defective design claims, on the ground that Wilson has not identified in his Complaint a particular physical flaw in Bugler's design. Wilson responds his pleading has met the requirements of Federal Rule of Civil Procedure 8(a), and sufficiently sets forth a claim for relief. Wilson believes B & W used additives to adulterate Bugler, and that such adulteration resulted in a "flawed condition of the

product" giving rise to a claim for strict liability for defective design. *See Morningstar*, 253 S.E.2d at 682. Wilson wishes to obtain information about these additives through the discovery process. B & W in turn replies (1) it is entitled to know the precise claims Wilson asserts, and (2) this Court should not permit Wilson to embark on a fishing expedition through discovery. As discussed *infra*, Federal Rule of Civil Procedure 9(b) requires only averments of fraud, mistake, or condition of the mind be pleaded with particularity. Wilson's pleading of Counts One and Eight are sufficient and in compliance with the notice pleading provisions of Rule 8(a).

### III. IMPLIED WARRANTY CLAIM

 B & W urges dismissal of Count Nine, breach of the implied warranty of fitness for a particular purpose, for two reasons. First, Wilson did not allege that he used Bugler for a particular purpose, and second, Wilson failed to allege B & W knew or had reason to know of Wilson's particular purpose. Wilson responds that while he must establish a particular purpose to prevail upon his claim, he is not required to state the purpose in his Complaint.

Count Nine is derived from West Virginia Code § 46–2–315, which provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

Note 2 of the official commentary to the statute defines a "particular purpose" as one that

> differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to the

uses which are customarily made of the goods in question.

As B & W notes, Wilson has not stated the particular purpose for which he used Bugler in his Complaint, despite the obvious availability of such information. Wilson himself admits only one purpose for Bugler exists, and presumably he refers to smoking the product. This is its ordinary purpose, and this is the purpose for which Wilson purchased the product. Because Wilson can allege no set of facts to support Count Nine, the Court must dismiss the claim. *See Lowe v. Sporicidin Int'l*, 47 F.3d 124, 132 (4th Cir.1995)(dismissing claim for breach of implied warranty of fitness for particular purpose, brought under Maryland's version of W.Va.Code § 46–2–315, for plaintiff's failure to allege her use of a product differed from the "ordinary purpose" for which the product was intended to be used).

### IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 Finally, B & W moves to dismiss Count Eleven, Wilson's claim for intentional infliction of emotional distress, on the ground that a plaintiff cannot base a claim for intentional infliction on wrongdoing directed at a class of consumers rather than at an individual plaintiff. B & W advances a single case, *Angus v. Shiley, Inc.*, 989 F.2d 142, 147 (3d Cir.1993), in support. *Angus* is unpersuasive. It is not binding on this Court; it is not a good indication of how a West Virginia court might address this issue, and the rule B & W attributes to *Angus* is dicta.[5]

For his part, Wilson responds that B & W's argument is "simply bad law," and states the "well established" rule in West Virginia "that a party may recover for the intentional infliction of emotional distress in a product liability action[ ] because no manufacturer expressly produces a product for a specific consumer." Pl.'s Response at 6–7. Wilson cites no authority in support of this "well established" rule.

---

5. The Court there held the plaintiff was not entitled to relief because (1) she did not allege the purported cause of her injuries, a heart valve, was defective, and (2) she alleged she suffered only emotional injury, not direct physical injury, as a result of her use of the product. *Id.* at 147.

The Court is concerned with how West Virginia courts would decide the issue. The Supreme Court of Appeals has stated the elements of a claim for intentional infliction of emotional distress as:

> One, the wrongdoer's conduct was intentional or reckless.... Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality.... Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Tanner v. Rite Aid of West Virginia, Inc.,* 194 W.Va. 643, 650, 461 S.E.2d 149, 156 n. 10 (1995)(quotations and cited authority omitted); *see also McClenathan v. Rhone–Poulenc, Inc.,* 926 F.Supp. 1272, 1277 (S.D.W.Va.1996)(Haden, C.J.). In light of these elements and the absence of West Virginia or other persuasive authority to the contrary, the Court concludes it cannot accept B & W's argument for dismissal of Count Eleven.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** dismissal of Count Nine but **DENIES** dismissal of Wilson's remaining claims.