Harry K. BLACK, et al., Plaintiffs,

v.

RHONE-POULENC, INC., Defendant.

Civil Action No. 2:96-0163.

United States District Court,
S.D. West Virginia,
Charleston Division.

April 15, 1997.

---

Richard Neely, Neely & Hunter, Charleston, WV, Henry Dart, Metairie, LA, Jack W. Harang, Law Offices of Jack W. Harang, Metairie, LA, for Plaintiffs.

J. Rudy Martin, Lynn Oliver Frye, James Eric Whytsell, A. L. Emch, Jackson & Kelly, Charleston, WV, for Defendant.

HADEN, Chief Judge.

## MEMORANDUM OPINION AND ORDER

Pending are Plaintiffs' motions (1) for modification of the Scheduling Order; and (2) for rehearing on Plaintiffs' motion for leave to amend or, in the alternative, for certification of the Court's decision pursuant to 28 U.S.C. § 1292(b). The Court **DENIES** Plaintiffs' motions for modification of the Scheduling Order and for rehearing. The Court **GRANTS** Plaintiffs, motion for certification pursuant to 28 U.S.C. § 1292(b).

1. The Scheduling Order was vacated by the Court January 24, 1997, with the exception of the final settlement conference and trial dates to allow completion of the notice and claims process. The January 24 Order directed the parties to suggest "deadlines for remaining case events no later than February 10, 1997." Plaintiffs suggested new deadlines for (1) completion of discovery; (2) exchange of expert reports; (3) expert depositions; and (4) the pretrial conference but did not seek a revised pleading amendment deadline. The previously expired dates set forth in the Scheduling Order, including that for amendment of the pleadings, were not affected by the *vacatur* of the Scheduling Order, which facilitated commencement of the second, post-certification phase of the case. Accordingly, Plaintiffs remain bound by the strictures of Rule 16(b), *Federal Rules of Civil Procedure*, discussed *infra*.

2. Plaintiffs requested the amendment after the Court observed, in ruling on Defendant's motion to dismiss, that a claim for negligent infliction of emotional distress was not a part of the original complaint. *See McClenathan v. Rhone-Poulenc*, 926 F.Supp. 1272, 1275 n. 4 (S.D.W.Va.1996). Plaintiffs asserted in support of their motion that the amendment was designed to "more fully assert a cause of action for the negligent infliction of emotional distress" which they claimed "clarific[d] a cause of action that was at least adumbrated in the original complaint...." Mem. in supp. of motion to amend at 1-2. The assertion was disingenuous. Plaintiffs' counsel previously evidenced no awareness that negligent infliction of emotional distress may have been an available claim under West Virginia law. *See Henley v.*

## I. PROCEEDINGS TO DATE

Plaintiffs filed their original complaint on February 26, 1996. On May 15, 1996 the Court entered a Scheduling Order pursuant to Rule 16(b), *Federal Rules of Civil Procedure*. At the parties' request, the Order set a deadline for the amendment of pleadings no later than July 9, 1996.[1] On July 9, Plaintiffs moved to amend their complaint, which was granted. The amended complaint was ordered filed July 17, 1996. It added a claim for negligent infliction of emotional distress.[2]

The parties filed voluminous briefing on the issue of class certification. Following the Court's ruling on class certification, Plaintiffs moved for Leave to submit a second amended complaint. In it Plaintiffs belatedly sought to add a nuisance cause of action.[3]

Plaintiffs asserted since the filing of the first amended complaint their claims "have been further refined both factually and in terms of legal theory." *See* Motion to

FMC Corp., 172 F.R.D. 193, 195 n.2 (S.D.W.Va. 1997).

3. This latest amendment proposal stemmed from the Court's extensive Certification Opinion and Order in this case, since restyled to *Black v. Rhone-Poulenc*, No. 96-0163, 1996 WL 812930 (S.D.W.Va. Dec. 19, 1996). During the class certification briefing, Plaintiffs raised for the first time the issue of recovering damages for annoyance, aggravation and inconvenience under a nuisance theory. The Court previously addressed the recoverability of these damages, although not the newly suggested theory, in *McClenathan*. *McClenathan*, 926 F.Supp. at 1280. The nuisance theory was raised in a brief filed September 23 by Plaintiffs' counsel:

> At the hearing on Defendant's initial Rule 12(b)(6) motion to dismiss, Plaintiffs' counsel admitted that he found no authority either way on whether annoyance, aggravation and inconvenience damages are recoverable when there has been an explosion and resulting release of highly toxic chemicals that cause annoyance, aggravation and inconvenience to thousands of persons. *The reason for counsel's dearth of authority was that he was looking in the wrong place!*

Memo of Law at 1-2 (emphasis added). Counsel then proceeded to discuss the law of nuisance at length. In the Certification Order, the Court explained that "[e]ven under the most liberal of pleading standards, Plaintiffs have not alleged a nuisance claim." *Black*, slip op. at 2 n. 2. The discussion of nuisance law in the September memorandum, in virtually identical language, was resubmitted in support of the recently filed motion to amend.

Amend at 2. They asserted that discovery revealed numerous prior chemical leaks in the area.[4] These new assertions seem to represent Plaintiffs' concession they did not state a claim for nuisance initially. *See also* supra note 3. Inconsistently, they later aver the proposed amendment "clarifies a cause of action that was at least adumbrated in the original complaint and First Amended Complaint[.]" See Memo in Support at 2.

The requested amendment reads:

> The leak that occurred on 15 February 1996 *is but one of many such leaks that have jeopardized the health and safety of some of the Plaintiffs over the past ten years.* The Defendant has a *pattern and practice* of emitting dangerous, life-threatening and noxious substances. These substances are emitted primarily as a result of Defendant's negligence, which at times amounts to willful and wanton disregard for the public safety in general and the safety of Plaintiffs in particular. *The regular emission of dangerous, life-threatening and noxious substances from Defendant's Nitro, West Virginia Plant constitutes a nuisance.* Therefore, Defendant is liable to Plaintiffs under the common law of nuisance in the State of West Virginia and is liable to the Plaintiffs for any and all annoyance, aggravation or inconvenience caused by the Defendant's release of toluene, MIC (and perhaps other chemicals) at the explosion and fire that occurred on 15 February 1996.

*See* Proposed Second Amended Complaint at. "Count Five." Plaintiffs also asserted Defendant thoroughly deposed them previously concerning (1) the extent of their damages for annoyance, aggravation and inconvenience; (2) the extent to which Plaintiffs have been exposed to other leaks or emissions by Defendant; and (3) the grounds on

---

4. Once again, counsels' assertion lacked credibility. In its recent Memorandum Opinion denying the motion to amend, the Court noted "Plaintiffs' assertions that further discovery and legal research necessitate refinement of their claims are amply discredited by Defendant's response memorandum. *See* Def.'s resp. at 2 n. 1." *Black v. Rhone–Poulenc, Inc.*, No. 2:96–0163, slip op. at 2 (S.D.W.Va. Feb. 5, 1997).

5. *Rule* 16(b) provides, in pertinent part, "A schedule shall not be modified except upon a

which Plaintiffs seek to recover for annoyance, aggravation and inconvenience.

Plaintiffs' motion to amend relied exclusively on *Rule* 15(a), *Federal Rules of Civil Procedure*, to support the proposed amendment. Defendant objected vigorously to the proposed amendment, relying on precedent from this District and this judge holding that a motion to amend following the expiration of the Scheduling Order's deadline for amendments must satisfy both the "good cause" requirement of *Rule* 16(b) and the requirements of *Rule* 15(a). Following Plaintiffs' reply, the Court denied the motion to amend. The Court concluded Plaintiffs failed to show good cause, considering the extensive pleading and briefing history discussed *supra.*

On February 14, 1997 Plaintiffs filed anew seeking (1) a modification of the Scheduling Order; and (2) a rehearing on the motion for leave to file the second amended complaint.

## II. DISCUSSION AND ANALYSIS

### A. The Motions to Modify the Scheduling Order and for a Rehearing

Since the motion to amend the complaint came after the Court's entry of the Scheduling Order, the decision on whether to permit the amendment is guided by the test set forth in *Marcum v. Zimmer*, 163 F.R.D. 250 (S.D.W.Va.1995):

> Once the scheduling order's deadline for amendment of the pleadings has passed, a moving *party* first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a).

*Id.* at 254.[5] *Marcum* discussed the parameters of the good cause requirement:

> showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Fed.R.Civ.P. 16(b). *Rule* 15(a) provides materially as follows: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).
>
> *Marcum* observed *Rule* 2.01(f)(1), *Local Rules of the United States District Court for the Southern District of West Virginia,* "provides, in part, that '[t]time limits in the scheduling order ...

' "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15." Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.... Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party was not diligent, the inquiry should end.*'

*Id.* at 254 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992))(emphasis added) (citations and quoted authorities omitted); *Smith v. United Parcel Serv.*, 902 F.Supp. 719, 721 (S.D.W.Va.1995)(stating "the good cause standard is much different from the more lenient standard contained in Rule 15(a)"). Stated more simply, "[T]he touchstone of 'good cause' ... is diligence." *Id.* at 255.

There are substantial policy reasons influencing the rules advanced in *Marcum:*

This Court's decision to adhere to the terms of its most recently entered Time Frame Order "does not ... exalt procedural technicalities over the merits of" Plaintiff's case. Rather ...

may be modified *for cause* by order'" *Id.* (emphasis added). In *Henley v. FMC Corp.*, 172 F.R.D. 193, 198 n. 7 (S.D.W.Va.1997), the Court interpreted the *Rule* 2.01(f)(1) standard to be coextensive with the good cause standard of *Rule* 16(b).

6. *Marcum* further noted the emerging pivotal role of the Scheduling Order:

With good reason, recent decisions have recognized '[a] scheduling order [under *Rule* 16(b) ] is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.' Indeed, a scheduling order is

[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15. .... As the torrent of civil and criminal cases unleashed in recent years has threatened to inundate the federal courts, deliverance has been sought in the use of calendar management techniques. Rule 16 is an important component of those techniques. we will not snatch it away or destroy its effectiveness by requiring district courts to countenance ... [dilatory and disruptive] practices.

If the trial judge is to be the case manager envisioned by the drafters of the Civil Justice Reform Act and the promulgators of recent rule amendments, the trial judge must be given the tools to craft appropriate enforceable schedules for pretrial events and the ultimate resolution of the case.

*Id.* at 255 (quoted authority omitted); *see also Alholm v. American Steamship Co.*, 167 F.R.D. 75, 79 (D.Minn.1996)(stating "Scheduling orders have become increasingly critical to the district court's case management responsibilities because '[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars.' ")(quoted authority omitted); *Eckert Cold Storage, Inc. v. Behl*, 943 F.Supp. 1230 (E.D.Cal.1996)(stating "This rule was designed to allow the district court to manage its calendar and to facilitate more efficient disposition of cases by settlement or by trial.").[6]

the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1 in 'secur[ing] the just, speedy, and inexpensive determination of every action.' Fed.R.Civ.P. 1. Specifically, the Advisory Committee for Rule 16 observed that subdivision (b)(1) of the Rule 'assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended.' *Marcum*, 163 F.R.D. at 253 (quoted authority omitted). To these modern interpretations, Plaintiffs responded with case law over two decades old. As demonstrated supra, much has

The motion to modify the Scheduling Order attempts a showing of good cause by (1) the threat of a further class action;[7] and (2) by asserting Defendant would not be prejudiced by the amendment because no merits discovery has taken place. Plaintiffs' showing is insufficient.[8] The motion for rehearing asserts Plaintiffs originally pled a nuisance claim and were somehow surprised by the Court's conclusion no nuisance claim was presented.[9] The argument is nonsense and a clear misrepresentation. First, the word nuisance appears nowhere in the Second Amended Complaint. Second, as discussed in note 3 *supra*, Plaintiffs' counsel admitted in September as follows:

> At the hearing on Defendant's initial Rule 12(b)(6) motion to dismiss, Plaintiffs' counsel *admitted* that he found *no authority either way on whether annoyance, aggravation and inconvenience damages are recoverable* when there has been an explosion and resulting release of highly toxic chemicals that cause annoyance, aggravation and inconvenience to thousands of persons. *The reason for counsel's dearth of authority was that he was looking in the wrong place!*

Counsel then proceeded, for the first time, to discuss the law of nuisance at length.

Plaintiffs' counsel have suggested their open-ended proposed amendment would not disrupt the class certification efforts and would not waste other work the Court and counsel have completed to date. Based on the numerous inconsistencies and misstatements by counsel to date, however, the assurances are less than comforting. Defendant's characterization appears more accurate, that the addition of the nuisance claim would "further delay this litigation by rendering much of the work already completed by the parties and the Court either irrelevant or incomplete, thereby requiring extensive reconsideration of previously resolved issues[.]" Def.'s resp. to motion to amend at 4. Plain-

---

changed in case management techniques adopted by judicial officers since the decisions Plaintiffs rely upon were decided.

As noted in *Marcum*, our Court of Appeals has addressed the interaction of *Rules* 15(a) and 16(b) only via an unpublished opinion. *Lone Star Transp. Corp. v. Lafarge Corp.*, Nos. 93–1505, 93–1506, 19 F.3d 1429, 1994 WL 118475 (4th Cir. Apr.7, 1994). In *Lone Star*, the court found a proposed amendment appropriate under both Rule 15(a) and 16(b) but did not resolve definitively whether a two-step analysis was required. *Id.* at *11.

7. The Court has weighed and analyzed the burdens attendant to (1) allowing the instant amendment and its disruption to the instant case with (2) having to oversee another class action sounding only in nuisance. While both options are unpalatable, the latter course is preferable. The instant case has been pending for some time but can proceed to judgment with dispatch because it has been refined and the issues have been narrowed considerably. A late addition of the nuisance claim would muddy already murky waters and perhaps sink a case the Court has carefully streamlined for the notice, briefing and pre-trial stages. It is unlikely a nuisance claim in a separately filed action would proceed to trial. Most likely, the "second" case would be resolved amicably by the parties, or voluntarily abandoned, depending on the outcome of this litigation.

8. In their reply on the motion to amend, Plaintiffs offered the following: "The 'good cause' for the amendment was this honorable Court's order

*stating explicitly* that *the Court needed to have the nuisance theory pled* before the Court would consider the nuisance theory at trial or otherwise." Reply Brief at 4. Reference to the Court's actual observations in footnote two of Black once again demonstrates counsels' disturbing disregard for accurate representations.

9. Citing *Labram v. Havel*, 43 F.3d 918 (4th Cir. 1995), Plaintiffs assert there is no necessity for pleading the legal theory relied upon. Assuming the truth of the proposition, and that *Labram* supports it, *Labram* is distinguishable from the instant case on many grounds. For instance, *Labram* involved a very discrete, simple set of facts arising from a minor's sexual molestation. In contrast, the instant case is a complicated class action with numerous Plaintiffs involving novel proposed applications of legal theories to complex facts. Further, Plaintiffs' supposed innocent belief they were not required to plead legal theories is belied by the fact they advanced specific legal theories, *and cited legal authorities*, in their original complaint. *See* Complaint at "Count One" (alleging strict liability and citing *Restatement (Second) of Torts* § 519); *id.* "Count Two" (negligence); *id.* "Count Four" (medical monitoring). It is thus dissembling for them to have asserted some very explicit claims but, for reasons sufficient to themselves, failed to plead others which they now find urgently necessary. Finally, Plaintiffs' claim they need not explicitly plead legal theories is undermined by recent circuit precedent. *See Brock v. Carroll*, 107 F.3d 241, 242 (4th Cir. 1997)(Luttig, J., concurring).

tiffs have been late and less than diligent in seeking amendment of the Scheduling Order and further amendment of the complaint. They have not demonstrated good cause for the modification. Accordingly, the Court **DENIES** the motion for modification and the motion for rehearing.[10]

### B. Motion for Certification Pursuant to 28 U.S.C. § 1292(b)

The Court **GRANTS** Plaintiffs' motion for certification of the above ruling pursuant to 28 U.S.C. § 1292(b). Specifically, the Court certifies the following issue for appeal:

Whether the "good cause" standard contained in Rule 16(b), *Federal Rules of Civil Procedure*, is applicable to Plaintiffs' motion to amend the complaint where scheduled amendment periods have passed, where class discovery has been completed and where class certification has occurred and whether, if applicable, Plaintiffs have demonstrated the "good cause" requirement of the Rule?

The ruling involves a controlling question of law as to which there may be substantial grounds for difference of opinion. Immediate appeal from this Memorandum Opinion and Order may advance the ultimate resolution of this litigation materially. Plaintiffs may seek immediate relief in the Court of Appeals for the Fourth Circuit, pursuant to Section 1292(b).

For reasons of case management and docket control, all further proceedings are **STAYED** and the case is relegated to the inactive docket until the earlier of (1) such time for seeking an immediate appeal pursuant to this Memorandum Opinion and Order has expired and no such appeal has been sought, (2) such time as the Court of Appeals refuses to accept this matter for interlocutory appeal; or (3) such time as the Court of Appeals has ruled on the certified question and issued its mandate to this Court.

### III. CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiffs' motions for modification of the Scheduling Order and for rehearing. The Court **GRANTS** Plaintiffs' motion for certification pursuant to 28 U.S.C. § 1292(b).

---

**10.** Given Plaintiffs have not satisfied the Rule 16(b) prong of the Marcum test, the Court need not address fulsomely the Rule 15(a) component. The Court is aware of the recent decision in *Medigen of Kentucky, Inc. v. Public Serv. Comm'n*, 985 F.2d 164 (4th Cir.1993).ʹ In *Medigen*, the Court of Appeals concluded it was not an abuse of discretion to permit plaintiff, on the eve

of trial, to add a claim that "did not change the substance of the case, did not require additional discovery, and did not prejudice the defendant." *Id.* at 168. In contrast, as noted in the *Henley* decision issued this same day, the substance of the proposed amendment is contrary to all three of these considerations. *Henley*, 172 F.R.D. at 199 n.11.