Debra Lynn **HENLEY**, et al., Plaintiffs,

v.

**FMC CORPORATION, a Delaware Corporation, Defendant.**

**Civil Action No. 2:95–1098.**

United States District Court,
S.D. West Virginia,
Charleston Division.

April 15, 1997.

---

**10.** Given Plaintiffs have not satisfied the Rule 16(b) prong of the Marcum test, the Court need not address fulsomely the Rule 15(a) component. The Court is aware of the recent decision in *Medigen of Kentucky, Inc. v. Public Serv. Comm'n*, 985 F.2d 164 (4th Cir.1993). In *Medigen*, the Court of Appeals concluded it was not an abuse of discretion to permit plaintiff, on the eve of trial, to add a claim that "did not change the substance of the case, did not require additional discovery, and did not prejudice the defendant." *Id.* at 168. In contrast, as noted in the *Henley* decision issued this same day, the substance of the proposed amendment is contrary to all three of these considerations. *Henley*, 172 F.R.D. at 199 n.11.

Richard Neely, Neely & Hunter, Charleston, WV, Jack W. Harang, Law Offices of Jack W. Harang, New Orleans, LA, Wilson H. Barnes, Henry Dart, Metairie, LA, for Debra Lynn Henley, Christopher Michael Henley, Kathleen Gross, David William Gross, Bertram Walter Gross, Tamara Dawn Bell, Savanna Hardwick, Pamela Dee Tincher, Morgan Tincher.

Joseph S. Beeson, Robinson & McElwee, Charleston, WV, Lee Davis Thames, O. Kendall Moore, Butler, Snow, O'Mara, Stevens & Cannada, P.L.L.C., Jackson, MS, for FMC Corp.

Richard Neely, Neely & Hunter, Charleston, WV, Jack W. Harang, Law Offices of Jack W. Harang, New Orleans, LA, Henry Dart, Metairie, LA, for Lauretta V. Hutchinson, Ryan M. Hutchinson, Andrew C. Hutchinson, Dorothy M. Dickerson, Sandra L. McCoy, Sue McClendon, Timothy P. Harr, Debra E. Taylor, Charles E. Hill, Ronald L. Manning, John Higginbothem, Joseph L. Higginbothem, John Cruikshank, Debra L. Beaver, Amanda E. Beaver, David Beaver, Symria Beaver, Mohamad Kahn, David E. Gibson, Carmine Dalessio, Cresta Simmons, George B. Goddard, Steven G. Perry, Joann Gaylor, John Wiseman, Joseph A. Dino, Edwin Bridges, Sherry Grubbs, James E. Wahl, Mary L. Pierson, Miranda C. Pierson, Travis J. Pierson, John McCorey.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (A) Plaintiffs' motions (1) for modification of the Scheduling Order; (2) for rehearing on Plaintiffs' motion for leave to amend or, in the alternative, for certification of the Court's decision pursuant to 28 U.S.C. § 1292(b); and (B) Defendant's motions (1) for modification of the class definition or, in the alternative, for certification of decision for interlocutory appeal pursuant to § 1292(b); and (2) to stay all further proceedings. The Court **DENIES** Plaintiffs' motions for modification of the Scheduling Order and for rehearing. The Court further **DENIES** Defendant's motion for modification of the class definition. The Court **GRANTS** the parties' motions for certification pursuant to 28 U.S.C. § 1292(b) and Defendant's motion to stay all further proceedings pending appeal.

### I. PROCEEDINGS TO DATE

Plaintiffs filed their original complaint on December 11, 1995. On March 15, 1996 the Court entered a Scheduling Order pursuant to *Rule* 16(b), *Federal Rules of Civil Procedure.* The Order set deadlines for critical case events, including a deadline for the

amendment of pleadings no later than May 10, 1996.[1] On April 8, 1996 Plaintiffs moved to amend their complaint. Defendant stipulated it did not oppose the motion. The Court approved and ordered the first amended complaint filed April 16, 1996. On June 12, 1996 Plaintiffs again moved to amend the complaint. Plaintiffs sought to add a claim for negligent infliction of emotional distress.[2] Though the date for amending pleadings had passed, the Court reluctantly permitted the modification, in part, because it was unopposed by Defendant. The second amended complaint was ordered filed effective July 17, 1996.

The parties filed voluminous briefs on the issue of class certification. The Court held two days of hearings on the motion in December 1996 and considered all lay and expert testimony and documentary evidence Plaintiffs wished to present. Just prior to the Court's class certification ruling, Plaintiffs moved again to amend, this time seeking to submit a third amended complaint. In it Plaintiffs belatedly sought to add a nuisance cause of action.[3] The Court did not take up

---

1. The parties originally requested an amendment deadline of August 5, 1996. Neither party objected, however, to the deadline adopted by the Court in the Scheduling Order.

2. Plaintiffs requested the amendment after the Court observed in a Memorandum Opinion disposing of a motion to dismiss in a similar case filed by Plaintiffs' counsel that a claim for negligent infliction of emotional distress was not a part of the original complaint. *See McClenathan v. Rhone–Poulenc*, 926 F.Supp. 1272, 1275 n. 4 (S.D.W.Va.1996). Plaintiffs' request to amend asserted they "intended to plead a cause of action for the negligent infliction of emotional distress" but thought it "a lesser included offense of intentional infliction of emotional distress[.]" Mem. in supp. of motion to amend at 1–2. The assertion was disingenuous. Plaintiffs' counsel previously evidenced no awareness that negligent infliction of emotional distress may have been an available claim under West Virginia law.

To illustrate, Plaintiffs' response to the motion to dismiss in *McClenathan* stated: "*If* Plaintiffs can prove *willful, wanton and reckless conduct* ... then under [West Virginia law] ... Plaintiffs can recover for pure emotional distress." Resp. to mot. to dismiss at 9 (dismissal response)(emphasis added). Second, the single mention of negligent infliction of emotional distress in the dismissal response was to be found in a parenthetical reference to *Heldreth v. Marrs*, 188 W.Va. 481, 425 S.E.2d 157 (1992) which reads "(recovery allowed for negligent infliction of emotional distress *when plaintiff witnessed a close relative* suffer a critical or fatal injury at the hands of a negligent defendant.)" Dismissal resp. at 11 (emphasis added). Third, the *McClenathan* opinion referred to the two West Virginia cases potentially forming the basis for a claim of negligent infliction under the circumstances here. Those cases were not cited in Plaintiffs' dismissal response but, remarkably, surfaced in the memorandum in support of the motion to amend, filed after *McClenathan*. Fourth, Plaintiffs' lack of reliance on negligent infliction is demonstrated by the fact that of the two negligent infliction cases cited in *McClenathan*, one, *Bramer v. Dotson*, 190 W.Va. 200, 437 S.E.2d 773 (1993), was *authored by one of Plaintiffs' counsel* while he was a justice on West Virginia's highest court.

Had counsel intended to rely on a negligent infliction theory, then, the theory certainly should have appeared in the complaint or *Bramer*, at least, would have been mentioned as authority in the dismissal response.

In the McClenathan dismissal briefing, counsel resorted to the specious argument that (1) since emotional distress is an adjunct to a claim for battery; and (2) Plaintiffs were "'battered' by the toxic chemicals[,]" they should be entitled to emotional distress damages. *Id.; see also McClenathan*, 926 F.Supp. at 1279 n. 7.

3. This latest amendment proposal again stemmed from events in the *McClenathan* case, since restyled to *Black v. Rhone–Poulenc*, No. 96–0163, 1996 WL 812930 (S.D.W.Va. Dec. 19, 1996). The Court issued an extensive Opinion and Order in Black prior to the certification ruling in the instant case. *Black v. Rhone–Poulenc, Inc.*, No. 96–0163, 1996 WL 812930 (S.D.W.Va. Dec. 19, 1996) (*Black*). During the class certification briefing in *Black*, Plaintiffs raised for the first time the issue of recovering damages for annoyance, aggravation and inconvenience under a nuisance theory. The Court previously addressed the recoverability of these damages, although not the newly suggested theory, in *McClenathan*. *McClenathan*, 926 F.Supp. at 1280. The nuisance theory was presented as follows in a brief filed in late September by Plaintiffs' counsel:

At the hearing on Defendant's initial Rule 12(b)(6) motion to dismiss, Plaintiffs' counsel *admitted* that he found no authority either way on whether annoyance, aggravation and inconvenience damages are recoverable when there has been an explosion and resulting release of highly toxic chemicals that cause annoyance, aggravation and inconvenience to thousands of persons. *The reason for counsel's dearth of authority was that he was looking in the wrong place!*

Memo. of Law at 1–2 (emphasis added). Counsel then proceeded to discuss the law of nuisance at length. In the Certification Order, the Court explained that "[e]ven under the most liberal of pleading standards, Plaintiffs have not alleged a nuisance claim." *Black*, slip op. at 2 n. 2. The

the motion prior to rendering its class certification opinion because the matter was not fully briefed.

Plaintiffs asserted since the filing of the second amended complaint their claims had "been further refined both factually and in terms of legal theory." *See* Motion to Amend at 2. They asserted that discovery revealed numerous prior chemical leaks in the area.[4] These new assertions seem to represent Plaintiffs' concession they did not state a claim for nuisance initially. *See also supra* note 3. Inconsistently, they later aver the proposed amendment "clarifies a cause of action that was at least adumbrated in the original complaint and First Amended Complaint[.]" Memo in Support at 2.

The requested amendment reads:

The leak that occurred on 5 December 1995 *is but one of many such leaks that have jeopardized the health and safety of some of the Plaintiffs over the past ten years.* The Defendant has a *pattern and practice* of emitting dangerous, life-threatening and noxious substances. These substances are emitted primarily as a result of Defendant's negligence, which at times amounts to willful and wanton disregard for the public safety in general and the safety of Plaintiffs in particular. *The regular emission of dangerous, life-threatening and noxious substances from Defendant's Nitro, West Virginia Plant constitutes a nuisance.* Therefore, Defendant is liable to Plaintiffs under the common law of nuisance in the State of West Virginia and is liable to the Plaintiffs for any and all annoyance, aggravation or inconvenience caused by the Defendant's release of phosphorous trichloride and its by-products (and perhaps other chemicals) at the leak that occurred on 5 December 1995.

*See* Proposed Third Amended Complaint at ¶ 11. Plaintiffs also asserted Defendant

thoroughly deposed them previously concerning (1) the extent of their damages for annoyance, aggravation and inconvenience; (2) the extent to which Plaintiffs have been exposed to other leaks or emissions by Defendant; and (3) the grounds on which Plaintiffs seek to recover for annoyance, aggravation and inconvenience.

Plaintiffs' motion to amend relied exclusively on *Rule* 15(a), *Federal Rules of Civil Procedure,* to support the proposed amendment. Defendant objected vigorously to the amendment, relying on precedent from this District and this judge holding that a motion to amend following the expiration of the Scheduling Order's deadline for amendments must satisfy both the "good cause" requirement of *Rule* 16(b) and the requirements of *Rule* 15(a). Following Plaintiffs' reply, the Court denied the motion to amend. The Court concluded Plaintiffs failed to show good cause, considering the extensive pleading and briefing history discussed *supra.*

On February 14, 1997 Plaintiffs filed anew seeking (1) a modification of the Scheduling Order; and (2) a rehearing on the motion for leave to file the third amended complaint.

## II. DISCUSSION AND ANALYSIS

### A. The Motions to Modify the Scheduling Order and for a Rehearing

Since the motion to amend the complaint came after the Court's entry of the Scheduling Order, the decision on whether to permit the amendment is guided by the two-part test explicated in *Marcum v. Zimmer,* 163 F.R.D. 250 (S.D.W.Va.1995):

Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a).

---

discussion of nuisance law in the September memorandum, in virtually identical language, was resubmitted in support of the motion to amend filed recently.

4. Once again, counsels' assertion lacked credibility. In its recent Memorandum Opinion denying

the motion to amend, the Court noted "Plaintiffs' assertions that further discovery and legal research necessitate refinement of their claims are amply discredited by Defendant's response memorandum. *See* Def.'s resp. at 10–12." *Henley v. FMC Corp.,* 172 F.R.D. 193, 195 (S.D.W.Va. 1997).

*Id.* at 254.[5] Marcum discussed the parameters of the good cause requirement:

> ' "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15." Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party was not diligent, the inquiry should end.'*

*Id.* at 254 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992))(emphasis added) (citations and quoted authorities omitted); *Smith v. United Parcel Serv.*, 902 F.Supp. 719, 721 (S.D.W.Va.1995)(stating "the good cause standard is much different from the more lenient standard contained in *Rule* 15(a)"). Stated more simply, "[T]he touchstone of 'good cause' . . . is diligence." *Marcum,* 163 F.R.D. at 255.

There are substantial policy reasons influencing the rules advanced in Marcum:

> This Court's decision to adhere to the terms of its most recently entered Time Frame Order "does not . . . exalt procedural technicalities over the merits of" Plaintiff's case. Rather . . .
>
> [d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15. . . . As the torrent of civil and criminal cases unleashed in recent years has threatened to inundate the federal courts, deliverance has been sought in the use of calendar management techniques.. Rule 16 is an important component of those techniques. We will not snatch it away or destroy its effectiveness by requiring district courts to countenance . . . [dilatory and disruptive] practices.
>
> If the trial judge is to be the case manager envisioned by the drafters of the Civil Justice Reform Act and the promulgators of recent rule amendments, the trial judge must be given the tools to craft appropriate enforceable schedules for pretrial events and the ultimate resolution of the case.

*Id.* at 255 (quoted authority omitted); *see also Alholm v. American Steamship Co.*, 167 F.R.D. 75, 79 (D.Minn.1996)(stating "Scheduling orders have become increasingly critical to the district court's case management responsibilities because '[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars.' ")(quoted authority omitted); *Eckert Cold Storage, Inc. v. Behl*, 943 F.Supp. 1230 (E.D.Cal.1996)(stating "This rule was designed to allow the district court to manage its calendar and to facilitate more efficient

---

**5.** *Rule* 16(b) provides, in pertinent part, "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Fed.R.Civ.P. 16(b). *Rule* 15(a) provides materially as follows: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

*Marcum* observed *Rule* 2.01(f)(1), *Local Rules of the United States District Court for the Southern District of West Virginia,* "provides, in part, that '[t]ime limits in the scheduling order . . . may be modified *for cause* by order.' " *Id.* (emphasis added). *Marcum* did not resolve definitively the issue, but indicated this Court "would[, if called upon,] interpret [*Rule* 2.01(f)(1) ] consistently and coextensively with the good cause

disposition of cases by settlement or by trial.").[6]

■ The motion to modify the Scheduling Order attempts to show good cause by (1) the threat of a further class action;[7] and (2) asserting Defendant would not be prejudiced by the amendment because no merits discovery has taken place.[8] Plaintiffs' showing is insufficient.[9] The motion for rehearing asserts Plaintiffs originally pled a nuisance claim and were somehow surprised by the Court's conclusion no nuisance claim was presented.[10] The argument is nonsense and

standard of *Rule* 16(b)." *Marcum*, 163 F.R.D. at 253 n. 5. The Court so holds today.

6. Marcum further noted the emerging pivotal role of the Scheduling Order:

> With good reason, recent decisions have recognized '[a] scheduling order [under *Rule* 16(b) ] is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.' Indeed, a scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of *Rule* 1 in 'secur[ing] the just, speedy, and inexpensive determination of every action.' Fed.R.Civ.P. 1. Specifically, the Advisory Committee for *Rule* 16 observed that subdivision (b)(1) of the Rule 'assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended.'

*Marcum*, 163 F.R.D. at 253 (quoted authority omitted). To these modern interpretations, Plaintiffs responded with case law over two decades old. As demonstrated *supra*, much has changed in case management techniques adopted by judicial officers since the decisions Plaintiffs rely upon were decided.

As noted in *Marcum*, our Court of Appeals has addressed the interaction of *Rules* 15(a) and 16(b) only via an unpublished opinion. *Lone Star Transp. Corp. v. Lafarge Corp.*, Nos. 93–1505, 93–1506, 1994 WL 118475 (4th Cir. Apr.7, 1994). In *Lone Star*, the court found a proposed amendment appropriate under both *Rule* 15(a) and 16(b) but did not resolve definitively whether a two-step analysis was required. *Id.* at *11.

7. The Court has weighed and analyzed the burdens attendant to (1) allowing the instant amendment and its disruption to the instant case with (2) having to oversee another class action sounding only in nuisance. While both options are unpalatable, the latter course is preferable. The instant case has been pending for some time but can proceed to judgment with dispatch because it has been refined and the issues have been narrowed considerably. A late addition of the nuisance claim would muddy already murky waters and perhaps sink a case the Court has carefully streamlined for the notice, briefing and pretrial stages. It is unlikely a nuisance claim in a separately filed action would proceed to trial. Most likely, the "second" case would be resolved amicably by the parties, or voluntarily abandoned, depending on the outcome of this litigation.

8. This assertion also is less than candid. In the memorandum in support of their motion to amend, Plaintiffs stated "Plaintiffs' causes of action have been further refined *as a result of merits discovery which has proceeded in this case along side of class action discovery . . . ."* Pls.' memo in supp. of motion to amend at 3 (emphasis added).

9. In their reply on the motion to amend, Plaintiffs further offered the following: "The 'good cause' for the amendment was this honorable Court's order *stating explicitly* that *the Court needed to have the nuisance theory pled* before the Court would consider the nuisance theory at trial or otherwise." See Reply Brief at 5. Reference to the Court's actual "explicit[ ]" statements in footnote two of *Black* once again demonstrates counsels' disturbing disregard for accurate representations.

10. Citing *Labram v. Havel*, 43 F.3d 918 (4th Cir.1995), Plaintiffs assert there is no necessity for pleading the legal theory relied upon. Assuming the truth of the proposition, and that *Labram* supports it, *Labram* is distinguishable from the instant case on many grounds. For instance, *Labram* involved a very discrete, simple set of facts arising from a minor's sexual molestation. In contrast, the instant case is a complicated class action with numerous Plaintiffs involving novel proposed applications of legal theories to complex facts. Further, Plaintiffs' supposed innocent belief they were not required to plead legal theories is belied by the fact they advanced specific legal theories in their first amended complaint. *See* First Amended Complaint at "Count One" (strict liability); *id.* "Count Two" (negligence); *id.* "Count Four" (medical monitoring). It is thus dissembling for them to have asserted some very explicit claims but, for reasons sufficient to themselves, failed to plead others which they now find urgently necessary. Finally, Plaintiffs' claim they need not explicitly plead legal theories is undermined somewhat by recent circuit precedent. *See Brock v. Carroll*, 107 F.3d 241, 241–42 (4th Cir.1997)(Luttig, J., concurring).

> Further, Defendant raises the central consideration with this late asserted issue:
>
> > Adding new claims concerning alleged leaks at FMC's plant over a ten year period would inject new subject matter into this litigation, not just alternative legal theories. This is a far cry from pleading alternative legal theories concerning the December 5, 1995 release, the subject matter of this litigation since inception.
>
> Def.'s resp. to motion for reh'g at 2 n. 1.

a clear misrepresentation. First, the word nuisance appears nowhere in the Second Amended Complaint. Second, as discussed in note 3 *supra*, Plaintiffs' counsel conceded in September 1996:

> At the hearing on Defendant's initial Rule 12(b)(6) motion to dismiss, Plaintiffs' counsel *admitted* that he found *no authority either way on whether annoyance, aggravation and inconvenience damages are recoverable* when there has been an explosion and resulting release of highly toxic chemicals that cause annoyance, aggravation and inconvenience to thousands of persons. *The reason for counsel's dearth of authority was that he was looking in the wrong place!*

Counsel then proceeded, for the first time, to discuss the law of nuisance at length.

■ Plaintiffs' counsel have suggested their open-ended proposed amendment would not necessitate (1) establishing another class; (2) reopening discovery and briefing on the issue of class certification; or (3) enlarging the class. Based on the numerous inconsistencies and misstatements by counsel to date, however, these latest assurances are less than comforting. Defendant's characterization appears more accurate:

> This Court set a schedule for the conduct of class action discovery. Defendant availed itself of that opportunity. It propounded written discovery and it also deposed approximately thirty litigants. Extensive briefing on the class certification issues was provided by the parties. This Court conducted two full days of hearings on the issue of class certification at which numerous witnesses were called. None of this effort was directed at the issue now raised by Plaintiffs' Motion[.]
>
> . . . .
>
> Thus the granting of Plaintiffs' Motion would necessitate the reopening of discovery, more briefing, another class action

hearing and more delay in the resolution of all of these issues.

Def.'s resp. to motion to amend at 14, 15; *see generally* Def.'s resp. to Pls.' motion for reh'g. Plaintiffs have been late and less than diligent in seeking amendment of the Scheduling Order and further amendment of the complaint. They have not demonstrated good cause for the modification. Accordingly, the Court **DENIES** the motion for modification and the motion for rehearing.[11]

**B. Motion for Modification of the Class Definition**

After carefully reviewing Defendant's motion seeking a modification of the class definition, the Court **DENIES** the motion.

**C. Motions for Certification Pursuant to 28 U.S.C. § 1292(b) and For a Stay**

The Court **GRANTS** the parties' respective motions for certification of the above rulings pursuant to 28 U.S.C. § 1292(b). Specifically, the Court certifies the following issues for appeal:

1. Whether the "good cause" standard contained in Rule 16(b), *Federal Rules of Civil Procedure*, is applicable to Plaintiffs' motion to amend the complaint where scheduled amendment periods have passed, where class discovery has been completed and where class certification has occurred and whether, if applicable, Plaintiffs have demonstrated the "good cause" requirement of the Rule?

2. Whether the Court is required, prior to the distribution of class notice, to modify the class definition in an airborne discharge case so as to define with specificity the geographic limits of the areas to which notice will be sent?

---

11. Given Plaintiffs have not satisfied the *Rule* 16(b) prong of the *Marcum* test, the Court need not address fulsomely the *Rule* 15(a) component. The Court is aware of the recent decision in *Medigen of Kentucky, Inc. v. Public Serv. Comm'n*, 985 F.2d 164 (4th Cir.1993). In *Medigen*, the Court of Appeals concluded it was not an abuse of discretion to permit plaintiff, on the eve of trial, to add a claim that "did not change the substance of the case, did not require additional discovery, and did not prejudice the" defendant. *Id.* at 168. In contrast, the proposed amendment, if granted, would change the substance of the case, increase discovery obligations, prejudice the Defendant and start anew the development of a case almost one and a half years old.

The rulings involve controlling questions of law as to which there may be substantial grounds for difference of opinion. Immediate appeal from this Memorandum Opinion and Order may advance the ultimate resolution of this litigation materially. The parties may seek immediate relief in the Court of Appeals for the Fourth Circuit, pursuant to Section 1292(b).

The Court further **GRANTS** Defendant's motion for a stay. All further proceedings are **STAYED** and the case is **RETIRED** to the inactive docket until the earlier of (1) such time for seeking an immediate appeal pursuant to this Memorandum Opinion and Order has expired and no such appeal has been sought; (2) such time as the Court of Appeals refuses to accept this matter for interlocutory appeal; or (3) such time as the Court of Appeals has ruled on the certified questions and issued its mandate to this Court. The stay is effective, *nunc pro tunc*, February 24, 1997.

### III. CONCLUSION

Based on the foregoing, the Court (1) **DENIES** Defendant's motion for modification of the class definition and Plaintiffs' motions (a) for modification of the Scheduling Order and (b) for rehearing; and (2) **GRANTS** (a) the parties' motions for certification pursuant to 28 U.S.C. § 1292(b); and (b) Defendant's motion to stay all further proceedings pending appeal.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.